(98 South. 544)

No. 25110.

### GREEN v. W. G. RAGLEY LUMBER CO.

(Nov. 5, 1923. Rehearing Denied by Division B, Dec 10, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Taxation** ⟪⟫903—Inheritance tax statute held not to invalidate conveyance by heirs before payment of tax.

Under Act No. 109 of 1906, § 3, making it unlawful to take possession or dispose of a donation mortis causa without authority of the court and section 16, providing that an heir or legatee shall be without capacity to alienate until the inheritance tax has been fixed and paid, the surviving spouse and children of an owner of timber land who had conveyed the timber after decedent's death without being sent into possession and without a decree that they owed no inheritance tax, could not, after obtaining such a decree and being sent into possession, treat their conveyance as void, and sell to another.

2. **Taxation** ⟪⟫866—Husband's interest in community property held not subject to inheritance tax on wife's death.

The half interest of a husband in community property, which was not inherited by him from his wife, but which was acquired by entry from the government during the régime of the community, *held* not subject to an inheritance tax nor affected by the inheritance tax law.

Appeal from Fifteenth Judicial District Court, Parish of Beauregard; Jerry Cline, Judge.

Action by Wiley M. Green against the W. G. Ragley Lumber Company. Judgment for defendant, and plaintiff appeals. Affirmed.

A. R. Mitchell and S. N. Young, both of Lake Charles, for appellant.

Powell & Le Compte, of De Ridder, and McCoy & Moss, of Lake Charles, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

OVERTON, J. Sabra Ann Green and her husband, Frank M. Green, owned, in community, a tract of timbered land situated in the parish of Beauregard. Mrs. Green died in September, 1909. After her death, her husband and children, at various intervals prior to 1920, sold their respective interests in the timber to the Gulf Lumber Company, which later sold the timber to the W. G. Ragley Lumber Company, the defendant in this case. At the time the Gulf Lumber Company made its purchases, the children of Mrs. Green had not petitioned the proper court, or any court at all, to ascertain wheth-

er there was an inheritance tax due on the property inherited by them, and to place them in possession, upon their paying the tax, if any, that might be found due. In April, 1921, long after the above sales had been made and duly recorded, the surviving children of Mrs. Green, and the heirs of one of the children who, since the execution of the above sales, had died, petitioned the district court in and for the parish of Beauregard to be sent into possession of the property inherited by them and for a decree declaring that they owed no inheritance tax. In May, 1921, judgment was rendered in accordance with the prayer of their petition. On the same day that this judgment was rendered, Frank M. Green and the surviving children of Mrs. Green sold to Wiley M. Green, an eleven-twelfths interest in the above timber for $7,800, notwithstanding the fact that they had sold the same timber previously to the Gulf Lumber Company, and had not reacquired it.

Shortly after the sale to Wiley M. Green, the Ragley Lumber Company, under its prior recorded title, entered upon the property, and proceeded to cut the timber thereon, and to remove it. Green then instituted this suit, asserting his title to the eleven-twelfths interest in the timber, under his purchase from the husband and surviving heirs of Mrs. Green, and prayed for a writ of injunction to restrain the Ragley Lumber Company from cutting any more of the timber, and sued the company for $1,410, the alleged value of the timber cut and removed.

The position of plaintiff is that the sales made to the Gulf Lumber Company by Frank M. Green are absolute nullities for the reason that they were passed prior to the determination of the question as to whether an inheritance tax was due, and before the heirs of Mrs. Green had been sent into possession of the property by judgment of court; and, as the Gulf Lumber Company acquired no title, that it had none to convey, and therefore that defendant acquired nothing by its purchase. The position is further taken, that as Frank M. Green and the heirs of Mrs. Green could not sell until the latter were sent into possession, the title remained in them, and that they accordingly had the right, after having been placed in possession, to sell the property to whomsoever they pleased, notwithstanding the previous sales made by them.

As the sales to the Gulf Lumber Company were made prior to 1920, plaintiff relies on sections 3 and 16 of Act No. 109 of 1906 to maintain his position. Section 3 reads that:

"It shall be unlawful for any heir, legatee or other beneficiary of a donation mortis causa to take or be in possession of any part of the things or property composing the inheritance, legacy or other donation mortis causa, or to dispose of the same or any part thereof, until he shall have obtained the authority of the court to that effect, as hereafter provided; and in case he shall so take or be in possession or shall so dispose of such things or property, or any part thereof, he shall no longer have the right of renouncing such inheritance or donation mortis causa, and shall remain personally liable for the tax thereon; but he may, without waiting for authority do such acts as may seem necessary to preserve the property from waste, damage or loss."

And section 16 reads:

"Each inheritance or legacy is indivisible, and must be accepted or renounced for the whole; and the heir or legatee shall not be entitled to be placed in possession of the same, and shall be without right or capacity to alienate any part thereof, until the tax on the whole shall have been fixed and paid, or until it shall have been judicially determined, in the manner herein provided, that no part of the same is subject to the tax imposed by this act."

[1] The purpose of the act, as indicated by its title, and as shown by its entire context, is to levy an inheritance tax, and to provide for the collection of the tax. True, section 3 makes it unlawful for heirs to take possession of and to alienate or otherwise dis-

pose of any part of the inheritance until the authority of the court shall have been obtained in the manner provided by the act, and section 16, in virtually so many words, provides that heirs shall be "without right or capacity" to alienate any part of the inheritance, until the tax on the whole shall have been fixed by the court and paid, or until it shall have been judicially ascertained that no tax is due; still, the purpose in enacting these provisions was merely to effectively provide for the collection of the tax by making the alienation of the inheritance, or any part of it, null, in so far as concerns the state, in its efforts to collect. In other words, the purpose in adopting these provisions was to place the state, while seeking to collect the tax, in position to ignore and treat as null and void any sale or other alienation that might be made in contravention of the act, and by penalizing the heirs by taking from them the right to renounce the inheritance. Therefore, under the provisions of the sections quoted, one of which has been amended and re-enacted, if an heir alienated any part of the inheritance, before complying with the statute, the alienation was, as to the state, in its proceeding to collect the tax, null and void, and could be ignored. It was not, however, the intention of the Legislature, in enacting the sections. or in adopting the act itself, to permit heirs to treat as null an alienation of inherited property made without complying with the statute, and then, after having complied with it, to treat the property as their own, and sell it to another. That such was not the legislative intention appears to us as being too clear to admit of question.

Since the making of the sales to the Gulf Lumber Company, section 16 of the Act of 1906, quoted above, has been amended and re-enacted by Act No. 199 of 1920. While the act of 1920 has been discussed in the briefs, still as the sales to the Gulf Lumber Company were made prior to its adoption, it would serve no useful end to discuss the act here. The act was discussed and applied in the recent cases of Bonvillain v. Richaud, 153 La. 431, 96 South. 21, and Barbarich v. Meyer, 154 La. 325, 97 South. 459, and it was held in the latter case, quoting from the former, that the act of 1920 did not prohibit the alienation of an inheritance subject to the tax.

[2] Our conclusions are that the sales made by the heirs of Mrs. Green to the Gulf Lumber Company were binding on them, and therefore are binding on their vendee, the plaintiff herein. And, in so far as concerns the sale made by Frank M. Green to the Gulf Lumber Company, it should be observed that the half interest which he conveyed to that company was not inherited by him from his wife, Mrs. Green, but was acquired by entry from the government during the régime of the community of acquêts and gains that existed between him and his wife, and hence was not subject to an inheritance tax, nor affected by the inheritance tax laws.

Our conclusion is that the court below was correct in rejecting plaintiff's demand for the value of the timber cut, and in dissolving the writ of injunction.

For the reasons assigned, the judgment appealed from is affirmed at appellant's costs.

Rehearing refused by Division B, composed of DAWKINS, LAND, and LECHE, JJ.