BRUNOT, Justice.
 

 The defendant has been a practicing lawyer in this state for many years. For several consecutive years, immediately preceding the filing of this suit, he was the plaintiff’s attorney, counselor, and adviser. This suit grows out of that relationship.
 

 The demands of the plaintiff are:
 

 First, for the return of $10,000, which sum the plaintiff paid the defendant, as his fee, for successfully defending an attack upon her mother’s will. This demand is based upon the ground that this fee was a charge against the succession and it should have been paid by the succession.
 

 Second, for $4,000, the alleged difference between the par value of three mortgage notes and the sum the defendant paid the plaintiff therefor.
 

 Third, the sum of $1,500, which the defendant collected from the Ogden Realty Company, as his fee for collecting a past due note of that company, which was held by the plaintiff.
 

 Fourth, for the return of certain fees the plaintiff paid to the defendant for preparing and attending to releases, by the plaintiff, of lots subject to her mortgage, that were sold by the Ogden Realty Company.
 

 Fifth, for interest on moneys collected by the defendant, from time to time, for the account of the plaintiff, and paid over to her in annual settlements.
 

 The record, in addition to the pleadings and documentary evidence, contains approximately 530 typewritten pages of oral testimony. We have carefully read the entire record and find, as did the learned trial judge, that plaintiff has failed to establish any part of *ny one of the demands set forth in her petition. Each one of said demands was considered by Judge Byrnes and disposed of adversely to the plaintiff’s contentions.
 

 We quote, with approval, from his wsiites* reasons for judgment, the following:
 

 “It appears to me that the underlying theory of plaintiff’s case, which through her counsel she has earnestly endeavored to force upon the court, is that she, a woman, inexperienced in business matters, was for some
 
 *837
 
 six or seven years under the hypnotic control of the defendant; that she trusted him implicitly ; that she asked no questions; that she did his bidding without reserve and voiced her appreciation and satisfaction of every move he made or service he performed in her behalf, until the 20th day of April, 1931, when suddenly her eyes were opened to the deceit which had been practiced upon her for many years by the said defendant, and this suit, which was filed some fifteen days later, is the result of the said awakening and disillusionment.
 

 “Because of the haziness of the allegations in plaintiff’s petition and because of the innuendoes and personal criticism of the defendant in the petition, and the charges of fraud against him I permitted the plaintiff, during the trial of this ease, to present any evidence which her counsel believed might assist her in proving the sensational charges which formed the basis of her suit. Likewise, I allowed the defendant, without restriction, to offer his evidence.
 

 “The plaintiff is a highly cultured and refined lady, a dominant type of womanhood, blessed with a personality of charm and possessing poise both in manner and speech. During the tedious trial of this case, this lady sat in the court room by the side of her attorneys, continually advising with them, constantly alive to every detail of the trial, ever ready to answer a question or to make an explanation. Therefore, it appears to me, from my observation of the plaintiff, from listening to her testimony and from the facts in the record, that neither Mr. Parsons nor any other man or woman ever had mental control over her. It is my opinion that she thoroughly understood everything that she ever did and that at no time would she have done anything unless she did thoroughly understand it.
 

 “I believe it to be my duty, in fairness to the defendant, to agree with his counsel in their criticism of the manner in which this case has been tried by counsel for the plaintiff, when they say, on page 9 of their reply brief:
 

 “ ‘The absence of any proof whatever justifying the loose statements and wild charges of the plaintiff’s counsel, has made this case a particularly painful matter to all of us. For abuse is particularly reprehensible when it emanates from seasoned practitioners who know better, and when it is totally unwarranted by any testimony in the record. Indeed, the invectives of plaintiff’s counsel create the impression that it has been, throughout the course of this litigation, their studied intention to attack and besmirch defendant’s character, rather than to comply with the Court’s request for a lawyer-like presentation of the relevant points of law and fact.’
 

 “I will now, as briefly as possible, state my reasons for holding that plaintiff is not entitled to recover upon any of her allegations or claims made in her petition. I will take these claims up seriatim.
 

 “(1) The claim for the return of the $10,000.00 fee paid by the plaintiff to the defendant on May 7, 1928.
 

 “It appéars to me that not only the law is favorable to the defendant on this particular claim, but also from a practical and common sense aspect of the facts plaintiff is not entitled to recover.
 

 
 *839
 
 “The récord shows that every dollar left by her mother would ultimately belong to the plaintiff, hence, from a practical standpoint, it appears to me to be immaterial as to whether she paid it directly or it was paid out of the succession funds. The law, however, in my opinion, clearly is against plaintiff’s contention. There is no question in my mind that she accepted the succession. The record shows that she had been sued individually and that she filed a reconventional demand individually. It is unnecessary to quote the authorities. The brief filed on behalf of the defendant contains a full discussion of them. They cannot be disputed. The evidence shows, according to plaintiff’s own testimony, that she deliberated for more than three months before she paid this fee, that she discussed it with her relatives and friends, and that without a word of complaint she voluntarily paid it.' It must also be remembered that for some three years thereafter she met the defendant on numerous occasions, she continued to transact business with him and not once did she complain either that the fee was excessive or that it should have been charged against the succession of her mother.
 

 “Counsel for plaintiff filed a supplemental brief in which, it seems to me, they show that they are convinced of the soundness of the decisions to the effect that the plaintiff had, under the articles of the Civil Code, accepted the succession of her mother. I say this because in the brief they argue that while the decisions above mentioned might be sound, yet the inheritance tax statutes abrogated the articles of the Civil Code relating to the tacit acceptance of the successions. Our supreme court has on several occasions held exactly the opposite to such a contention. Prieto v. Faure, 169 La. 75, 124 So. 150; Wilkinson v. Wyche, 158 La. 596, 104 So. 381; Barbarich v. Meyer, 154 La. 326, 97 So. 459; Bonvillain v. Richaud, 153 La. 431, 96 So. 21.
 

 “As stated previously, the reasonableness of the fee is not before me for consideration.
 

 “In my opinion, plaintiff is not entitled to recover the amount of this fee, as it was a proper charge against her individually.
 

 “(2) Plaintiff seeks to recover $4,000.00, being the difference between the par value and the sale value of three mortgage notes bought from her by the defendant in April, 1929.
 

 “This claim can be immediately disposed of. Defendant produced a document dated April 23, 1929, which plaintiff admits bears her signature. In this document she expressly states, T hereby sell and transfer to E. A. Parsons, Attorney,’ etc., the notes which are therein described in detail. Again, not a word of evidence was introduced by plaintiff to show that the price paid by Parsons was inadequate or that a better price could have been obtained from a third-person. In this matter it is also well to remember that although these notes were sold in April, 1929, plaintiff at no time expressed any dissatisfaction with the said sale or the amount received until the filing of this suit, more than two years later. Plaintiff’s explanation as to how her signature might have been signed by heron this document, in my opinion, is not sufficient. It would be extremely difficult for me to believe that the plaintiff in this case signed this document, or any other document, in blank.
 

 “(3) Plaintiff claims $1,500.00 collected as attorney’s fees by the defendant from the Ogden Realty Company in 1927.
 

 
 *841
 
 “This el,aim is disposed of in practically the same manner as claim No. 2.
 

 “The defendant produced and filed in evidence a resolution bearing the written approval of plaintiff, which resolution was adopted by the Ogden Realty Company on August 3, 1927, authorizing the payment of this amount to the defendant. In the face of such a document, signed by the plaintiff, her claim must necessarily fall.
 

 “In this particular transaction she had been benefited by the services of Mr. Parsons. The interest on the notes had been increased by one-half of one per cent, and a more advantageous distribution of the cash received for lots sold subject to her mortgage was arranged.
 

 “(4) Plaintiff claims that she is entitled to a judgment in her favor against the defendant for the entire amount which she paid him for attending on her behalf to the releases of lots sold out of the mortgaged tract.
 

 “As in the two preceding claims, defendant produces documentary evidence which precludes recovery by the plaintiff.
 

 “Every one of these charges are set forth in the yearly detailed settlements which the defendant made with the plaintiff from the year 1925 until 1929, at which time the defendant purchased the notes. Every one of these statements was approved by the plaintiff in writing. Under these facts, it appears to me that it would be impossible for plaintiff to recover.
 

 “(5) Plaintiff claims that she is entitled to recover from the defendant 7 per cent, interest on certain sums of money which the defendant, during the course of each year, received for and on her behalf but retained in his possession until the date of the annual settlements, the claim for interest being computed on these sums from the date that the defendant received them until the date of the annual settlement, at which time.they were accounted for.
 

 “It is admitted that the principal amounts involved were paid or accounted for each year in the annual settlements which were made on October 5th. These yearly settlements were, as stated above, approved in writing by the plaintiff. The plaintiff, as the evidence shows, was familiar with all the business which the defendant transacted for her and I am at a loss to understand why, if she expected or desired interest on any of these sums collected by the defendant during the course of any twelve months and retained by him until the date of settlement, she failed, on the date of settlement, to demand interest, or to require, in the future, the defendant to turn over to her any cash received for her account at the moment it came into his hands. Certainly the record shows no such demand was ever made and that no such instructions were ever given. In my opinion, her approval of these settlements would, even if the law were different from the provisions contained in our Civil Code, prevent its application in her favor at this time. There is no allegation in the petition, nor proof offered in the record, that the defendant converted any of these sums to his own use, and article 3015 of the Civil Code requires such allegation and proof before interest may be recovered. Hence, even if plaintiff had not signed and approved the annual settlements above mentioned, she would not, under the provisions of the above cited article of the Civil Code, be entitled to a
 
 *843
 
 judgment in her favor on this claim for interest.”
 

 The foregoing findings of the trial judge, in which we concur, dispose of this case. It is therefore decreed that the judgment appealed from be affirmed at appellant’s cost.
 

 ST. PAUL, J¡, absent.